Case 3:23-cv-00185-FM   Document 1   Filed 05/05/23   Page 1 of 15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| PAOLA DOMINGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>KELLER POSTMAN LLC, an Illinois Limited Liability Company, and NATIONAL INTAKE CENTER<br><br>Defendant. | §§§§§§§§§§§§§ |

EP23CV0185

## COMPLAINT

Plaintiff, PAOLA DOMINGUEZ, brings this action against Defendant KELLER POSTMAN LLC and NATIONAL INTAKE CENTER, and alleges based on personal knowledge and information, and belief, as follows:

### PRELIMINARY STATEMENT

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone... For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Paola Dominguez ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant KEELER POSTMANT LLC ("Keller") sent a series of automated telemarketing calls for the purposes of commercial

1

solicitation by contacting Plaintiff's cellular telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

3. Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## PARTIES

4. Plaintiff PAOLA DOMINGUEZ ("Plaintiff"), is a natural person, who resides in El Paso, Texas, is a citizen of the State of Texas, and was the individual who received the alleged phone calls in this case on her private mobile telephone, and was a resident of Texas during the calls, in this case in El Paso County, Texas

5. Defendant KELLER POSTMAN LLC ("Keller") is a professional limited liability company organized and existing under the laws of Illinois, with a principal address of 150 N. Riverside Plaza, STE 4100, Chicago, Illinois 60606, and can be served via registered agent Zina Bash, 501 Congress Avenue, Suite 150, Austin, Texas 78701.

6. Defendant NATIONAL INTAKE CENTER, LLC ("National") is a limited liability company organized and existing under the laws of Nevada and can be served via the entity's manager Richard Fonbuena at 3320 N Buffalo Dr, Ste 208, Las Vegas, NV, 89129

## JURISDICTION AND VENUE

7. **Subject Matter Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case.

2

8.      **Personal Jurisdiction**. This Court has specific personal jurisdiction over Defendant because they have repeatedly placed calls to Texas residents, the phone calls were purposefully directed into this forum, and Defendant performs legal representation in this forum.

9.      **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims the calls and sale of goods and services directed at Texas residents, including Plaintiff occurred in this District and because Plaintiff was residing in the Western District of Texas when she received a substantial if not every single call from Defendant that are the subject matter of this lawsuit.

## Statutory Background

## The Telephone Consumer Protection Act

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do-Not-Call Registry

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

## The Texas Business and Commerce Code § 302.101

19. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State to make telephone solicitations inside the state of Texas or to residents in the state of Texas.

20. Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

21. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §302.303.

## Factual Allegations

22. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, phone number ending in 6911.

23. Plaintiff personally registered her cellular telephone ending in 6911 on the National Do-Not-Call Registry on January 16, 2022.

24. Plaintiff registered her phone number on the Do-Not-Call list in order to obtain solitude from invasive and harassing telemarketing calls. The telemarketing calls prevented Plaintiff from using her phone for legitimate purposes.

25. Plaintiff received at least five (5) telemarketing calls soliciting legal representation between April 7, 2023, and April 10, 2023, to her personal cell phone number, without her prior express written consent and not related to an emergency purpose.

26. **Call 1:** On February 22, 2023, Plaintiff received a phone call that displayed 915-296-6647 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

27. **Call 2:** On February 22, 2023, Plaintiff received a phone call that displayed 915-296-6647 on the caller identification. Plaintiff was unable to answer this phone call.

28. **Call 3:** On February 22, 2023, Plaintiff received a phone call that displayed 707-302-3411 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

29. **Call 4:** On February 30, 2023, Plaintiff received a phone call that displayed 915-549-4984 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

6

30. **Call 5:** February 30, 2023, Plaintiff received a phone call that displayed 915-372-6846 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

31. **Call 6:** On March 1, 2023, Plaintiff received a phone call that displayed 915-303-0323 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

32. **Call 7:** On March 2, 2023, Plaintiff received a phone call that displayed 915-499-0626 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

33. **Call 8:** On March 2, 2023, Plaintiff received a phone call that displayed 915-225-6529 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

34. **Call 9:** On March 14, 2023, Plaintiff received a phone call that displayed 731-312-8439 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. The representative identified herself as "CJ." Plaintiff had received at least eight Camp Lejeune solicitation phone calls at this point and was agitated, annoyed, and felt harassed. Therefore, Plaintiff feigned interest in Defendant Keller's legal services.

35. The telemarketer in Paragraph 34, through information and belief, was an offshore telemarketer based outside the laws and jurisdiction of the United States. This telemarketer eventually transferred Plaintiff to an agent who identified himself has "Mario." Mario is an agent of Defendant National.

36. **Call 10:** On March 16, 2023, Plaintiff received a phone call that displayed 810-688-6451 on the caller identification. Plaintiff answered the phone and the representative solicited Plaintiff for Camp Lejeune representation. The agent on the phone informed Plaintiff he had spoken to Plaintiff about a month ago. Plaintiff went along with the process and was eventually sent a retainer agreement to hire Defendant Keller to represent Plaintiff in Camp Lejeune litigation. Plaintiff was sent the contract by "Jack."

37. **DNC Request #1.** Upon receipt of the contract, Jack attempted to coerce Plaintiff into immediately signing the contract without allowing time to read the contract. Plaintiff informed Jack she was not interested in signing and to not call back.

38. **Call 11:** On March 16, 2023, at 11:28 AM, Plaintiff received a phone call that displayed 651-384-1806 on the caller identification. Plaintiff answered the phone and the representative attempted to get Plaintiff to sign the contract. Plaintiff declined as she had already told Defendants she was not interested and to not call again.

39. **Call 12:** On March 16, 2023, at 11:30 AM, Plaintiff received a phone call that displayed 651-384-1806 on the caller identification. Plaintiff ignored this phone call as the telemarketer had immediately called Plaintiff after just being told two minutes prior Plaintiff was not interested.

40. **Call 13:** On March 16, 2023, at 11:33 AM, Plaintiff received a phone call that displayed 531-200-6920 on the caller identification. Plaintiff answered this call and it was the same telemarketer calling from a different number to trick Plaintiff into answering the phone because Plaintiff had ignored her harassing phone call in Paragraph 39.

41. **Call 14: DNC Request # 2:** On March 16, 2023, Plaintiff received a phone call that displayed 612-315-6509 on the caller identification. Plaintiff answered the phone and the

8

representative attempted to coerce Plaintiff into signing the contract. Plaintiff declined and asked the representative not to call back.

**42.     Call 15: DNC Request # 3:** On March 17, 2023, Plaintiff received a phone call that displayed 612-315-6509 on the caller identification. Plaintiff answered the phone and the representative attempted to coerce Plaintiff into signing the contract. Plaintiff declined and asked the representative not to call back.

**43.     Call 16: DNC Request # 4:** On March 17, 2023, Plaintiff received a phone call that displayed 612-315-6509 on the caller identification. Plaintiff answered the phone and the representative attempted to coerce Plaintiff into signing the contract. Plaintiff declined and asked the representative not to call back.

**44.** The following is a table detailing the telephone calls sent by Defendant to Plaintiff's cell phone number:

TABLE A

| Call: | Date: | Caller ID: | Time: | Notes: |
|---|---|---|---|---|
| 1 | 02/22/2023 | 915-296-6647 | 1:10 PM | Camp Lejeune telemarketer |
| 2 | 02/22/2023 | 915-296-6647 | 1:23 PM | Missed call |
| 3 | 02/22/2023 | 707-302-3411 | 1:39 PM | Camp Lejeune telemarketer |
| 4 | 02/30/2023 | 915-549-4984 | 2:40 PM | Camp Lejeune telemarketer |
| 5 | 02/30/2023 | 915-372-6846 | 3:08 PM | Camp Lejeune telemarketer |
| 6 | 03/01/2023 | 915-303-0323 | 9:59 AM | Camp Lejeune telemarketer |
| 7 | 03/02/2023 | 915-499-0626 | 10:40 AM | Camp Lejeune telemarketer |
| 8 | 03/02/2023 | 915-225-6529 | 10:41 AM | Camp Lejeune telemarketer |
| 9 | 03/14/2023 | 731-312-8439 | 2:29 PM | Marie |
| 10 | 03/16/2023 | 810-688-6451 | 10:14 AM | Jack sent a contract |
| 11 | 03/16/2023 | 651-384-1806 | 11:28 AM | Camp Lejeune telemarketer |
| 12 | 03/16/2023 | 651-384-1806 | 11:30 AM | Declined call |
| 13 | 03/16/2023 | 531-200-6920 | 11:33 AM | Camp Lejeune telemarketer |
| 14 | 03/16/2023 | 612-315-6509 | 11:37 AM | DNC request |
| 15 | 03/17/2023 | 713-673-3334 | 11:07 AM | DNC request |
| 16 | 03/17/2023 | 915-929-2912 | 12:10 PM | DNC request |

**45.** On May 5, 2023, Plaintiff conducted a search for Defendant on

https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp, and Defendant did not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

46. Defendant did not have Plaintiff's prior express written consent to make any of these telemarketing calls.

47. Prior to these unsolicited telephone communications, Plaintiff has never done any business with Defendant, and Plaintiff never provided Defendant with her cellular telephone number.

48. Plaintiff received the calls on her private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

49. Defendants are not organizations exempt from the TCPA.

50. Defendants' calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

51. Defendants' calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

52. Defendant Keller is a law firm well aware of the regulations regarding the TCPA and the ethical prohibition surrounding unsolicited direct advertising to consumers with whom no preexisting relationship exists.

53. Keller made the conscious decision to ignore the law and their ethical guidelines in pursuit of economic gain and each and every phone call placed by Defendant Keller was a knowing and willful violation of the TCPA and TBCC.

54. In summary, Plaintiff received sixteen (16) telemarketing calls from Defendant to Plaintiff's personal cell phone number which is registered on the National Do-Not-Call list.

55. No emergency necessitated the calls.

## DEFENDANT KELLER IS LIABLE FOR THE PHONE CALLS PLACED BY THE DEFENDANT NATIONAL INTAKE

56.     Keller is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as National. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

57.     Keller markets legal representation through direct telephone solicitation by its hired National telemarketers, who act on its behalf. Defendant National transfers live, hot leads to Keller and Keller accepts the leads. National was Keller's agent when it made the prohibited calls on behalf of, and with the actual authority from, National pursuant to a contract that governs National's telemarketing for Keller.

58.     Keller directs, controls, authorizes, and pays National to generate live-transfer leads for Defendant's legal services through telephone solicitation. Moreover, it requires, authorizes, or at least permits National's telemarketers to solicit explicitly for Camp Lejeune representation.

59.     Keller sets the criteria for qualifying leads, which National must follow, and National live-transfers leads qualified on those criteria exclusively to Keller. Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client was stationed at Camp Lejeune when they were stationed at Camp Lejeune, and whether there was some type of cancer or physical impairment that manifested as a result of the Camp Lejeune stay.

60.     On information and belief, Keller writes or at least approves the call script National telemarketers use when qualifying leads for Keller.

61.     National telemarketers are Keller's associates and do nothing to disturb the impression that National telemarketers work for, and speak and act on behalf of, Keller.

11

62. From National telemarketer's initial call through Defendant Keller's acceptance of a completed representation application, the telemarketing of Keller's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Keller, the principal, with National acting as Keller's agent.

63. National, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Keller's criteria, and then live-transferred Plaintiff to Keller's advisor to continue marketing legal representation.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

64. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

65. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

66. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

67. Defendants' calls reduced Plaintiff's storage, reduced Plaintiff's data plan, and angered, and frustrated Plaintiff.

## Violations of the Texas Business and Commerce Code § 302.101

68. Defendants' actions violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

69. Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

70.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

71.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50

## CAUSES OF ACTION

### I. FIRST CLAIM FOR RELIEF

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)**

**(Against All Defendants)**

72.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in paragraphs 1-71.

73.     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

74.     Plaintiff was statutorily damaged at least sixteen (16) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

75.     Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

76. As a result of Defendants' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

77. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

### (Against All Defendants)

78. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in paragraphs 1-71.

79. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without her prior express written consent.

80. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302(a).

81. Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees. Texas Business and Commerce Code 302.302(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paola Dominguez prays for judgment against Defendant jointly and severally as follows:

14

A.  Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violated the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $1,500 per call in statutory damages arising from the TCPA § 227(b) intentional violations jointly and severally against the corporation for sixteen (16) calls;

E.  An award of $1,500 in statutory damages arising from sixteen (16) violations of the Texas Business and Commerce code 302.101.

F.  An award to Plaintiff of damages, as allowed by law under the TCPA;

G.  An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as allowed by law and equity

H.  Such further relief as the Court deems necessary, just, and proper.

May 5, 2023,                                          Respectfully submitted,

*/s/ Paola D.*

Paola Dominguez
Plaintiff, Pro Se
2316 Bill Howard Pl.
El Paso, TX 79936
915-383-6911
pdomin14@gmail.com